**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

GLORIA ELIZABETH ROMERO-PEREZ, §
TDCJ No. 02178995,                              §
                                                           §
                    **Petitioner,**                §
                                                           §
v.                                                       §          CIVIL NO. SA-25-CA-0379-JKP
                                                           §
ERIC GUERRERO, Director,                §
Texas Department of Criminal Justice, §
Correctional Institutions Division,       §
                                                           §
                    **Respondent.**              §

**MEMORANDUM OPINION AND ORDER**

Before the Court is *pro se* Petitioner Gloria Elizabeth Romero-Perez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254.[1]  In the § 2254 petition, Petitioner challenges the constitutionality of her 2018 state court conviction for continuous trafficking of persons, arguing that she was denied the right to the effective assistance of counsel by both her trial counsel and appellate counsel.  Also before the Court are Petitioner's Memorandum in Support and Respondent Eric Guerrero's Answer thereto.[2]

Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner is not entitled to relief under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  *See* 28 U.S.C. § 2254(d).  Petitioner is also denied a certificate of appealability.

---

[1]          ECF No. 1.

[2]          ECF Nos. 7, 13.

# I.  Background

In September 2016, Petitioner was charged by indictment with the offenses of continuous trafficking of persons (count 1) and the sale or purchase of a child (count 2).[3]  Both offenses involved Petitioner's niece, A.L., who was fifteen years old at the time of the alleged offenses. The facts of Petitioner's case were accurately summarized by the Third Court of Appeals of Texas as follows:

> According to the evidence presented at trial, when [A.L.] was thirteen years old, [Petitioner] paid approximately $6,000 to smuggle [A.L.] and the child's grandmother into the United States.  Upon [A.L.]'s arrival in Texas, she lived with [Petitioner], who acted as the child's primary caretaker.
>
> [A.L.] and [Petitioner] did not get along well, and [A.L.] was sent to live temporarily with [Petitioner]'s sister.  There, [A.L.] met Julio Jimenez, a 33-year-old man, and developed a relationship with him.  When [A.L.] returned to [Petitioner], that relationship continued, and at one point she ran away from home and stayed with Jimenez.  When [Petitioner] learned of this, she called Jimenez and told him that she wanted to talk to him "about the situation that was happening with [A.L.]."  She explained to Jimenez that she and [A.L.] were "having problems" and "could not live together" anymore but that [Petitioner] had paid $6,000 to "bring her here," and "if she's going to be with you, then you have to pay me that money that I paid to—to bring her over here."  A meeting was arranged between [Petitioner] and Jimenez to discuss the matter further, and at the conclusion of the meeting, [Petitioner] and Jimenez agreed that Jimenez would pay her $700 per month in exchange for [Petitioner] allowing [A.L.] and Jimenez to live together.  [A.L.] was fifteen years old when [Petitioner] made the agreement with Jimenez.  The State presented testimonial and documentary evidence of the agreement and the payments that Jimenez made.
>
> After the meeting, [A.L.] went to live with Jimenez, and they had sexual intercourse at Jimenez's residence on multiple occasions, with [A.L.] eventually becoming pregnant.  At some point thereafter, Jimenez refused to make further payments to [Petitioner], and [Petitioner] later reported to the police that [A.L.] was a runaway, that she was living with Jimenez, and that [A.L.] was pregnant with Jimenez's child.  During the subsequent investigation, the police learned of the agreement between Jimenez and [Petitioner] and charged them both with trafficking offenses.

---

[3]     ECF No. 9-1 at 15-17.

*Romero-Perez v. State*, No. 03-22-00494-CR, 2023 WL 5109606 (Tex. App.—Austin, Aug. 10, 2023).[4]  After hearing the evidence, a Comal County jury convicted Petitioner of count 1, acquitted her of count 2, and sentenced her to twenty-five years of imprisonment.  *State v. Romero-Perez*, No. CR2016-659 (207th Dist. Ct., Comal Cnty., Tex. Jan. 12, 2018).[5]

The procedural history immediately following Petitioner's conviction is lengthy and unnecessary for the adjudication of the instant proceeding.[6]  Ultimately, the Texas Court of Criminal Appeals granted Petitioner permission to file an out-of-time appeal in July 2022.  *Ex parte Romero-Perez*, No. 93,505-01, 2022 WL 2965516 (Tex. Crim. App. July 27, 2022).[7]  The Texas Third Court of Appeals then affirmed Petitioner's conviction and sentence in an unpublished opinion on direct appeal.  *Romero-Perez*, 2023 WL 5109606.  Petitioner did not appeal this decision in a petition for discretionary review to the Texas Court of Criminal Appeals.[8]

Instead, Petitioner challenged the constitutionality of her conviction by filing an application for state habeas corpus relief in the trial court.  *Ex parte Romero-Perez*, No. 93,505-02 (Tex. Crim. App.).[9]  Despite the fact that both parties submitted extensive briefing on the two

---

[4]    ECF No. 12-35.

[5]    ECF No. 9-4 at 9-11 (Judgment of Conviction), 13 (Judgment of Acquittal).

[6]    This complicated procedural history includes, among other things, four different appeals filed by the State concerning various procedural issues, two motions for new trial granted by the trial court, and a reversal of the trial court by the Texas Third Court of Appeals.  *See State v. Romero-Perez*, No. 03-18-00122-CR, 2018 WL 2770717 (Tex. App.—Austin, June 8, 2018); *State v. Romero-Perez*, No. 03-18-00122-CR, 2018 WL 4856578 (Tex. App.—Austin, Oct. 5, 2018); *State v. Romero-Perez*, No. 03-18-00122-CR, 2019 WL 361875 (Tex. App.–Austin, Jan. 29, 2019); *State v. Romero-Perez*, No. 03-18-00122-CR, 2019 WL 1716790 (Tex. App.—Austin, April 18, 2019); *State v. Romero-Perez*, No. 03-18-00122-CR, 2020 WL 1472361 (Tex. App.—Austin, Mar. 26, 2020) (ECF No. 10-6).

[7]    ECF Nos. 11-20; 11-22.

[8]    ECF Nos. 7 at 4; 13-2.

[9]    ECF No. 11-24 at 11-26 (Application).

issues raised by Petitioner, the trial court did not issue any findings of fact and conclusions of law.[10]  Nevertheless, the Texas Court of Criminal Appeals denied the application without written order on March 26, 2025.[11]

A week later, Petitioner initiated the instant proceedings by filing a petition for federal habeas corpus relief.[12]  In the petition and supplemental memorandum in support that followed, Petitioner raises the same two allegations that were rejected during her state habeas corpus proceedings—namely, that (1) her trial counsel rendered ineffective assistance by failing to challenge the constitutionality of the Texas human-trafficking statute as applied to Petitioner's conduct, and (2) her appellate counsel rendered ineffective assistance by failing to challenge the sufficiency of the evidence supporting a conviction.

## II.  Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by the AEDPA.  28 U.S.C.A. § 2254.  Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  This intentionally difficult standard stops just short of imposing a complete bar on federal court relitigation of claims

---

[10]    ECF Nos. 11-24 at 65-110 (Petitioner's Memorandum in Support); 11-26 at 373-429 (State's Answer), 466-69 (State's Proposed Findings), 471-504 (Petitioner's Proposed Findings).

[11]    ECF No. 11-27.

[12]    ECF No. 1 at 15.

already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable, regardless of whether the federal habeas court would have reached a different conclusion itself. *Richter*, 562 U.S. at 102. Instead, a petitioner must show that the decision was objectively unreasonable, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

Federal habeas review is straightforward when a state habeas court has provided reasons for its decision to deny habeas relief: the reviewing federal court must "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims." *Wooten v. Lumpkin*, 113 F.4th 560, 566 (5th Cir. 2024) (citing *Wilson v. Sellers*, 584 U.S. 122, 125 (2018)). But when a state court's denial of habeas relief is not explained, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Id*. If, as in this case, there is no reasoned state court decision to look to, a federal court "must determine what arguments or theories supported or, . . . could have supported, the state court's decision." *Richter*, 562 U.S. at 102.

Regardless of whether a reasoned explanation was provided, a state court's rejection of a claim on the merits precludes federal habeas relief so long as "fairminded jurists could disagree"

on the correctness of the state court's decision.  *Id*. at 101 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In other words, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 103; *see also Bobby v. Dixon*, 565 U.S. 23, 24 (2011).

### III.  Merits Analysis

**A.      Trial Counsel (Claim 1)**

In her first allegation, Petitioner contends that she received ineffective assistance from her trial counsel due to counsel's failure to object to the constitutionality of Chapter 20A.02 of the Texas Penal Code, the human trafficking statute.  This allegation was raised during Petitioner's state habeas proceedings and ultimately rejected by the Texas Court of Criminal Appeals.  As discussed below, Petitioner fails to demonstrate the state court's rejection of the allegation was either contrary to, or an unreasonable application of, Supreme Court precedent.

1.      The *Strickland* Standard

Sixth Amendment claims concerning the alleged ineffective assistance of trial counsel (IATC claims) are reviewed under the familiar two-prong test established in *Strickland*.  466 U.S. at 668.  Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced his defense.  *Id*. at 687-88, 690.  According to the Supreme Court, "[s]urmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct, and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 22 (2013) (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Finally, IATC claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). Where, as here, the state court adjudicated the IATC claims on the merits, a court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 578 U.S. 113, 117 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)); *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standards," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101. That is to say, the question to be asked in this case is not whether counsel's actions were reasonable, but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 105.

2.    Analysis

Petitioner faults her trial counsel for failing to challenge the constitutionality of the Texas human trafficking statute as impermissibly vague.   In relevant part, a person commits a trafficking offense if the person knowingly "traffics a child and by any means causes the trafficked child to engage in, or become the victim of" the offenses of indecency with a child, sexual assault, or sexual performance by a child.   Tex. Penal Code § 20A.02(a)(7)(B), (C), and (I).   A person also commits an offense under the statute by knowingly "receiv[ing] a benefit from participating in a venture that involves" these offenses.   Tex. Penal Code § 20A.02(a)(8).

Petitioner argues that this statute, as applied to her conduct, "is so impermissibly vague and indefinite as to violate her due process rights."[13]   She states that she sacrificed financially to bring her niece to the United States and had no notice that her attempt to be reimbursed for this effort could be construed either as "trafficking" or as a "benefit" to doing so.   According to Petitioner, a reasonable person in her position—even a person with legal training—would be "left to speculate as to whether she may engage in the conduct in question without running afoul of the Texas human-trafficking statute."[14]   The Court disagrees.

The void-for-vagueness doctrine guarantees that ordinary people have "fair notice" of the conduct a penal statute proscribes.  *Sessions v. Dimaya*, 584 U.S. 148, 155-56 (2018) (citation omitted).   A conviction fails to comport with due process if the statute under which it is obtained is "so vague that it does not provide adequate notice of what conduct will be deemed criminal." *Springer v. Coleman,* 998 F.2d 320, 322 (5th Cir. 1993) (quoting *Kolender v. Lawson,* 461 U.S. 352, 357 (1983)).   In evaluating vagueness, a reviewing court should consider whether the statute: (1) provides a person of ordinary intelligence a reasonable opportunity to know what is

---

[13]    ECF No. 7 at 21.

[14]    *Id.* at 22.

prohibited, and (2) provides explicit standards to avoid arbitrary or discriminatory enforcement. *United States v. Williams*, 553 U.S. 285, 304 (2008) (citation omitted); *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 551 (5th Cir. 2008) (same).

Here, Petitioner takes issue with the terms "traffic" from § 20A.02(a)(7) and "benefit" from § 20A.02(a)(8), arguing that the terms are so vague that they provide no notice that her particular conduct was prohibited. But the statute itself specifically defines "traffic" to mean "to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." Tex. Penal Code § 20A.01(4).[15] And the Texas Penal Code defines "benefit" as "anything reasonably regarded as economic gain or advantage, including benefit to any other person in whose welfare the beneficiary is interested." Tex. Penal Code § 1.07(a)(7). Thus, based on the plain text provided by the Texas Penal Code, the statute in question clearly places a person of ordinary intelligence on notice that (1) making a child available to engage in, or become the victim of, certain prohibited sexual conduct, and (2) receiving economic gain for doing so, are both prohibited. In other words, contrary to Petitioner's arguments, the Texas human trafficking statutes under which she was convicted are not unconstitutionally vague.[16]

Petitioner has provided no persuasive authority to the contrary. Indeed, when facing a challenge based on vagueness, the Texas human trafficking statutes have been upheld by the state courts. *See Ritz v. State*, 533 S.W.3d 302, 307 (Tex. Crim. App. 2017) (Newell, J., Hervey, Yeary, and Keel, JJ., concurring) (rejecting argument that continuous trafficking statute was ambiguous); *Benavides v. State*, No. 04-18-00273-CR, 2019 WL 5580260, at *5 (Tex. App. Oct.

---

[15] In Petitioner's case, the relevant term is "provide," which is not defined in the Texas Penal Code but has a common and ordinary meaning of "to supply or make available." *See* Webster's Ninth New Collegiate Dictionary 948 (1990); New Oxford American Dictionary 1406 (3rd ed. 2010); *see also Romero-Perez*, 2023 WL 5109606 at *4.

[16] It is again worth noting that this Court has not been tasked with determining the constitutionality of the statute, but rather with reviewing the state court's determination that trial counsel was not ineffective in failing to raise such a challenge.

30, 2019) (finding petitioner failed to show continuous trafficking statute was unconstitutionally vague). For this reason, counsel cannot be considered ineffective for failing to raise a meritless objection to the statute. *See Miller v. Thaler*, 714 F.3d 897, 904 n.6 (5th Cir. 2013) (counsel is not required to make futile motions or objections); *Roberts v. Thaler*, 681 F.3d 597, 612 (5th Cir. 2012) ("the failure to lodge futile objections does not qualify as ineffective assistance") (quoting *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).

In sum, Petitioner has not shown counsel's performance was deficient or prejudicial, or that the state court's denial of this claim was an unreasonable application of *Strickland*. Consequently, given the deference afforded to the state court's ultimate determination, relief is denied.

**B.    Appellate Counsel (Claim 2)**

Petitioner next contends she received ineffective assistance of counsel during her direct appeal proceedings. A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when she has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The familiar standard set out in *Strickland* to prove that counsel rendered unconstitutionally ineffective assistance applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). Thus, to obtain relief, Petitioner must demonstrate that (1) appellate counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for appellate counsel's deficient performance, the outcome of Petitioner's appeal would have been different. *See Robbins*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2015). As discussed below, Petitioner does not meet this requirement.

10

The State charged Petitioner with the offense of continuous trafficking of persons, committed on or about October 29, 2015, through on or about April 1, 2016.[17]   A person commits that offense "if, during a period that is 30 or more days in duration, the person engages two or more times in conduct that constitutes an offense under Section 20A.02 [trafficking of persons] against one or more victims."  Tex. Penal Code § 20A.03(a).  Petitioner contends that her appellate counsel rendered ineffective assistance by failing to raise a challenge to the sufficiency of the evidence regarding the "continuous" element of her offense.  According to Petitioner, the vague testimony concerning the dates that A.L. and Jimenez engaged in sexual intercourse undermines the legal sufficiency of the evidence.

As discussed thoroughly by Respondent in his Answer (ECF No. 13 at 21-28), the record contradicts Petitioner's assertions that the evidence was insufficient to demonstrate the "continuous" element of the offense.  To start, the lengthy testimony of Anthony Moreno, a detective with the Comal County Sheriff's Department, detailed his belief that Petitioner trafficked A.L. for a duration of 30 or more days that caused A.L. to become a victim of several sexual offenses on two or more occasions.  *See* ECF No. 9-21 at 209-211 (testimony of Detective Moreno).  This testimony was corroborated by the testimonies of both A.L. and Jimenez, each of whom testified to the number of sexual encounters between them.  *See* ECF Nos. 9-22 at 56-58 (Jimenez's testimony that they had sex "more than three or four times" from September 2015 to April 2016); 9-23 at 8-9, 13 (A.L.'s testimony that they had sex approximately ten times during this time period).  While there was conflicting testimony on exactly when and how many times the relationship became sexual, the evidence still demonstrated that Petitioner trafficked A.L. for a duration of more than 30 days.

---

[17]    ECF No. 9-1 at 15-17.

Similarly, the record supports the allegation that Petitioner benefitted from providing A.L. to Jimenez on more than one occasion during a period of 30 or more days. *See* ECF Nos. 9-21 at 209-211 (testimony of Detective Moreno); 9-22 at 51-56 (Jimenez's testimony that he agreed to pay Petitioner $6,000 for A.L. and made several payments to her). This testimony was corroborated by several exhibits establishing the dates Jimenez made payments to Petitioner. *See* ECF Nos. 9-25 at 12-17, 35-40 (State's Exhibits 2, 3, 6 and 7); 9-30 at 310-313 (State's Exhibit 17). Thus, contrary to Petitioner's assertions, the evidence that she continuously trafficked A.L. for a period of 30 or more days and also benefitted from this venture during the same time period is clearly not insufficient.

Because Petitioner's insufficient-evidence claim lacks merit, appellate counsel was not deficient for failing to raise such a claim. For the same reason, there is no likelihood Petitioner would have obtained relief had the claim been raised in a motion for new trial or on direct appeal, and therefore no prejudice was caused by appellate counsel's failure to raise it. Further, Petitioner has made no attempt to demonstrate that this insufficient-evidence claim is clearly stronger than the allegations raised in her other direct appeal proceedings. *See Vasquez v. Stephens*, 597 F. App'x 775, 780 (5th Cir. 2015) (unpublished) (finding petitioner must demonstrate "a particular nonfrivolous issue was clearly stronger than issues that counsel did present" to prove ineffective assistance).

Consequently, Petitioner fails to show that the state court's rejection of this allegation was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record. Indeed, this Court has independently reviewed the record and finds that Petitioner's underlying insufficient-evidence allegation lacks merit. Thus, viewing all of the evidence under the doubly-deferential

standard that applies on federal habeas review, Petitioner has not shown that the state court's decision was objectively unreasonable or that she is entitled to relief under the *Strickland* standard. *Richter*, 562 U.S. at 101. Federal habeas relief is therefore denied.

## IV.  Certificate of Appealability

The Court must now determine whether to issue a certificate of appealability (COA). *See* Rule 11(a) of the Rules Governing § 2254 Proceedings; *Miller–El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)). A COA may issue only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This requires a petitioner to show "that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 336 (citation omitted).

A district court may deny a COA *sua sponte* without requiring further briefing or argument. *See Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). For the reasons set forth above, the Court concludes that jurists of reason would not debate the conclusion that Petitioner was not entitled to federal habeas relief. As such, a COA will not issue.

## V.  Conclusion and Order

Petitioner failed to establish that the state court's rejection of her claims on the merits during her state habeas corpus proceeding was either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence

13

presented during her state trial, direct appeal, and habeas corpus proceedings.  As a result, Petitioner's federal petition does not warrant federal habeas corpus relief.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and Petitioner Gloria Elizabeth Romero-Perez's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All remaining motions, if any, are **DENIED**, and this case is now **CLOSED**.

**SIGNED this the 27th day of April, 2026.**

_____
**JASON PULLIAM**
**UNITED STATES DISTRICT JUDGE**